In the Matter of William C. McLIN.

No. 49S00–9305–DI–565.

Supreme Court of Indiana.

Dec. 12, 1994.

---

Kevin P. McGoff, Kiefer & McGoff, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary Robert C. Shook, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

Pursuant to their tendered Statement of Circumstances and Conditional Agreement for Discipline, Respondent William C. McLin and the Disciplinary Commission have agreed that Respondent engaged in attorney misconduct and that the proper discipline for such misconduct is a suspension from the practice of law for thirty days. Their agreement is now before this Court for approval.

Respondent has tendered his affidavit, pursuant to Ind. Admission and Discipline Rule 23, Section 17(a). We find that the agreement should be approved, for reasons more fully set out herein.

This action formally commenced with filing of the Commission's Verified Complaint for Disciplinary Action on May 25, 1993. In it, the Commission alleged that Respondent violated Rules 1.15(a), 1.15(b), 8.4(b), 8.4(c), and 8.1(a) of the *Rules of Professional Conduct for Attorneys at Law* in connection with Respondent's handling of his clients' funds. Adopting the factual statement contained in the conditional agreement, we now find that Respondent was admitted to the Bar of this state on November 19, 1969, and, accordingly, is subject to this Court's disciplinary jurisdiction. Dora Haskett ("Haskett") retained Respondent to represent her in a personal injury action in May, 1990. Haskett and Respondent agreed that Respondent would be compensated for his services through a contingency fee arrangement. Respondent subsequently negotiated a $3,000.00 insurance settlement on Haskett's behalf, and on December 17, 1991, deposited the settlement proceeds into his personal checking account at Indiana National Bank ("INB"). After this deposit, the balance in that account was $5,714.07. On December 30, 1991, Respondent wrote Haskett a check for $2,000.00, drawn on his personal INB account. The account's balance that day was $10,471.81.

On January 13, 1992, Haskett opened a savings account at Union Federal Savings Bank ("Union Federal") and deposited the check she received from Respondent. She attempted to withdraw funds from that account on January 28, 1992, but was told by bank employees that Respondent's check had been returned due to insufficient funds. Union Federal therefore froze Haskett's account. INB had notified Respondent of the returned check on January 20, and of the fact that his account contained only $337.60 on that date. Respondent did not issue Haskett a replacement check until February 19, 1992, when he drew a check on his attorney-at-law trust account ("trust account") in order to purchase a cashier's check payable to Union Federal.

When initially responding to the Commission's inquiries regarding these transactions, Respondent stated that he deposited the settlement proceeds into his trust account, drew a check on his INB account for Haskett's portion of the proceeds, but inadvertently neglected to transfer money into the INB account. In reality, Respondent initially deposited the settlement proceeds into his INB account, wrote Haskett a check from that account, and used his trust account to purchase the cashier's check with which he ultimately reimbursed Haskett.

Bank records indicate that on December 17, 1991, Respondent's trust account was overdrawn by $7,381.37, and remained in negative balance until January 23, 1992, when Respondent deposited two settlement checks he had received on behalf of two other clients. Between January 20, 1992 and January 30, 1992, Respondent's personal INB account and trust account did not contain, separate or combined, sufficient funds to reimburse Haskett $2,000.00 for the returned check. On January 23, 1992, Respondent deposited two settlement checks, totaling $9,159.10, into his trust account. At the time of this deposit, the account was overdrawn by $8,277.50. Trust account funds due and owing to the two clients whose settlement proceeds he deposited amounted to $7,127.28.

Both Respondent's INB account and his trust account contained deposits comprised of insurance settlements and worker's compensation proceeds, portions of which represented property belonging to Respondent's clients. Respondent drew personal checks and had arranged for other debits to the accounts. The INB account had an automatic monthly insurance premium withdrawal of $88.86. His trust account had two monthly automatic withdrawals: $145.50 for West Publishing; and $15.60 for Amway. When responding to the Commission during investigation of this matter, Respondent explained that the return of Haskett's check was due to the automatic insurance premium withdrawal, and that the account was short only "a few scant dollars." In fact, the shortfall when Haskett attempted to negotiate the check was over $1,000.00.

We find that the agreed facts establish that Respondent violated Ind. Professional Conduct Rule 1.15(a) by depositing client funds into his personal INB account. Such conduct involves commingling of client and personal monies. Respondent violated Prof. Cond.R. 1.15(b) by neglecting to reimburse Haskett for the returned check for a period of one month, and thus failing to promptly deliver funds to a client who was entitled to those funds. By making use of funds belonging to Haskett to finance his personal expenditures, and by depositing client funds into an account with an $8,277.50 deficit, Respondent violated Prof.Cond.R. 8.4(b). Respondent engaged in conduct involving dishonesty and misrepresentation in violation of Prof. Cond.R. 8.4(c) by depositing client funds into an account which was deficient by over $8,000.00. His various misrepresentations to the Commission during investigation of this matter violated Prof.Cond.R. 8.1(a).

Having found misconduct, it is now the duty of this Court to assess the sufficiency of the agreed discipline. In undertaking this analysis, we note that Respondent completely failed to maintain a clear demarcation between his funds and those of his clients. As a result, he used funds properly belonging to others in satisfaction of personal obligations. Respondent's establishment and maintenance of an ongoing automatic debit from his trust account for what was apparently a personal expenditure clearly reveals his misunderstanding of or disregard for this Court's guidelines for management of client funds. Lawyers are obligated to "hold the property of others with the care required of a professional fiduciary." Comment to Prof.Cond.R. 1.15. This entails keeping clients' property separate from the lawyer's business and personal property. *Id.*

We also consider mitigating circumstances when assessing disciplinary sanction. The Commission and Respondent agree there are several here. Respondent has no prior disciplinary record, apparently had no motive to deprive Haskett of her money permanently, and has expressed remorse about the incident. Haskett did not suffer significant financial injury as a result of being temporarily deprived of the use of her funds. Further, shortly before this incident, Respondent and his wife both suffered significant medical problems, both of which necessitated Respondent's absence from his law practice for extended periods. At about the same time, the business client which sustained approximately ninety-five percent of Respondent's practice began sending its business to other attorneys, necessitating a restructuring of Respondent's practice. The Commission and Respondent agree that the inaccurate statements contained in Respondent's response to the Commission's initial investigation resulted from Respondent's haste to provide information, and not from a conscious effort to mislead.

Despite these mitigating circumstances, the fact remains that Respondent engaged in serious misconduct and thus should be disciplined accordingly. We conclude that a period of suspension is commensurate with his misconduct, and therefore approve the agreed discipline. It is, therefore, ordered that the Respondent, William C. McLin, be suspended from the practice of law for a period of not less than thirty (30) days, beginning January 16, 1995, at the conclusion of which he shall be automatically reinstated.

Costs of this proceeding are assessed against the Respondent.